matter on calendar, which is Lawson. May it please the Court, good morning. I'm Eugenie Mitchell with Brewer & Mitchell, and with me today at council table is Maureen Sullivan. Also with our firm, we represent the plaintiff and appellant, Edward Eugene Lawson. This is a very Social Security claim, and Mr. Lawson has been denied his Social Security disability insurance benefits, because essentially the commissioners ALJ approached Mr. Lawson's case backwards. What we have now is a question of the onset of Mr. Lawson's disability. The ALJ found him on the 50th birthday, and then that made him eligible for SSI benefits, but not for his Social Security benefits, because it did not encompass his date last insured. And the commissioner has a policy, Social Security ruling 8320, which sets out quite clearly the steps that the decision maker is to go through in establishing onset. Once there is a decision of disability, then there are specific steps to go through and specific things to look for. And the burden is not simply on the claimant to prove disability as of the onset date, if there are difficulties in doing that, because as there were in this case, if there's a gap in medical records, the ALJ has a duty to assist in that. Obviously, we feel that there's enough evidence that onset date can be established based on what's already in the record, but if there were any question of that, then under the rule, the ALJ should have called in a medical expert at the very least in order to assist in establishing an onset date. Instead, what he did is he treated it as two cases and just said, well, first he decided that Mr. Lawson was not disabled as of his onset date, and then turned and did the disability evaluation with respect to the SSI portion of the case for a later date. And that actually was as of his 50th birthday. Did the standards differ between disability for purposes of when one is less than 50 and 50 and over? There may be differences. And that actually brings me to the next point that I was going to make, which is that in any determination of disability, the commissioner has a sequential evaluation process, and you go through the process of determining whether or not the person is disabled. So just because the ALJ happened to determine that Mr. Lawson was disabled at the age of 50, doesn't mean that he wasn't disabled by one of the other parts of the sequential evaluation before the age of 50. But the standards do change once you turn 50, because the commissioner presumes that you are less able to acquire the skills necessary in order to find employment. So it is quite plausible, then, that in a very close case, that one might be disabled as of the age of 50, but not disabled previously. And although it seems sort of silly to say, well, I'm disabled as of this date, but not as of the day before that, there has been a change in the standards applicable, and I don't understand you to be challenging that judgment by the commissioner. That is, I don't understand you to be challenging the law as irrational. No, I'm not making a constitutional challenge about the 50-year-old line. However, what I am saying is that the ALJ made numerous other mistakes, and even, I mean, it's wonderful that he found Mr. Lawson disabled at the age of 50, but there were many things that he left out of even that evaluation, that had he followed the treating physician rule, had he looked at all Mr. Lawson's impairments, had he done a proper credibility determination, all of which are things that are well established in this Court's law, that he would have, yes, found him disabled as he did, but he would have also had, then, the tools for finding him disabled at the age of 50. At an earlier point, as well. He didn't look at all of his impairments. He did not follow the treating physician rule. Which impairments didn't he look at? Well, he did not consider the sleep apnea. He considered it only as of the position Mr. Lawson was in at the age of 50, when he just finally had it diagnosed, and he had been suffering from this for 10 years, and he had finally had it diagnosed, and he was finally beginning to get some treatment for it, but for the previous 10 years, he had been having great functional difficulties, because he was sleepy, and he had daytime somnolence, and he would fall asleep frequently at 10, 10.30 in the morning, if he got up at a reasonable hour. And it was very unpredictable. He also had urinary frequency that was, he said, even as of the time of the hearing, he was still having that problem of having to go to the bathroom five, six times a day, five, six, seven times a day, I believe his testimony was, during the course of what would be an ordinary workday, and the V.E. testified that that would preclude him from being able to perform the jobs that were identified during the hearing. So there were numerous things that the ALJ just skipped over and didn't consider, because he was looking at it only from that 50-year-old point. I'll reserve the rest of my time. Okay. Certainly. Good morning. I'm Jacqueline Forslund, and I'm appearing on behalf of the commissioner of the appellee in this case. This is a close case. Under Social Security regulations, a person's either disabled or not disabled. That's why on appeal we see the line-drawing cases. And in this case, the ALJ drew the line in claimant's favor and issued a partially favorable decision, finding the claimant was disabled as of his 50th birthday. Addressing plaintiff's impairments, the key inquiry, according to Sample v. Schweiker, is whether the impairment is amenable to control. According to the medical record, claimant's treating physician first suspected sleep apnea in 1998. He was referred to a sleep specialist who, in August of 1998, performed some testing and examined plaintiff and prescribed some medications, and said that in all likelihood, claimant would require CPAP therapy. But polysonography had to be performed first. Four different appointments were made for claimant, and he did not have this polysonography until six days before the hearing. And he testified at the hearing that he still didn't have a CPAP machine. That's a breathing machine that enables someone with sleep apnea to sleep without an eruption, because it was not possible to prevent their breathing problems. But apparently, shortly after the hearing, he did get his CPAP machine, because according to Dr. Andrews in May, which was about six weeks after his hearing, claimant's sleep apnea was stable on CPAP, and it was coming under control. Claimant also had some other impairments that were amenable to control, including his heel spurs. His podiatrist prescribed orthotics in December of 1997, but claimant didn't show up for his casting appointment. In fact, by his hearing in April of 1999, he still didn't have his orthotics, which would have relieved the pressure on his feet. He also testified that when he didn't take his diabetes medications, he had trouble with perspiring and nervousness. But when he took his medications, he was fine. He was also advised to stop smoking, but in June of 1998, the examining physician noted that he was still smoking a pack a day. He was advised to exercise, yet one of his treating physician's diagnosis in April of 1998 was obesity, deconditioning, and inactivity, which is how he put it. So claimant's, many of claimant's impairments were amenable to control. Also, I'd like to address briefly the vocational issues. Claimant contends that the jobs identified by the V.E. were skilled. However, an SVP-3 and SVP-4 jobs are semi-skilled. An SVP-3 job requires between one and three months of vocational preparation, which very often can be OJT implant training, and an SVP-4 requires three to six months training. And according to our rules, if someone's under 50, their age generally is not considered to be a factor, which would prevent vocational adjustment. Also, the vocational expert considered the fact that this person had a high school education, and in accordance with our regulations, 20 CFR 4041564, someone who has a high school education generally will be found to be able to perform unskilled, I mean, semi-skilled and skilled work, and to make that vocational adjustment. There is an exception for someone over 50. If they do not have, if their high school education does not give them skills that provides ready entry into the marketplace, then that person, then that will affect their vocational, their occupational base, which is not true for someone who's under 50. The ALJ's RFC was very favorable to claimant. The ALJ relied on three different opinions, the opinion of the State agency physician, the examining physician, and the treating physician. And even though two of these physicians found that claimant could perform light work, the lifting requirements of light work up to 20 pounds, the ALJ found that claimant could perform only sedentary work or a little less than sedentary work, which is why he became disabled by operation of law on his 50th birthday. Are there any other questions? I just wish to make a couple of points. With respect to Mr. Lawson's having difficulty making it to the appointments for the polysomnography and his difficulty with obtaining orthotics, Mr. Lawson is on general assistance or was on general assistance. That's part of his testimony and part of the record. For instance, a $40 copay is approximately one quarter of his monthly income was at that time. They were unable to arrange transportation for him to a sleep center. It is in the record that that was the problem with obtaining those tests and therapies. In addition, Mr. Lawson's hypertension, as I think I pointed out in the brief, by having a chart of all of his symptoms, blood pressures, as well as a chart of his weights and blood glucose levels, his hypertension and his diabetes were not under control. They were trying to control it. The doctor might say it was controlled one time, and then the next time, up the statistics would go again. And that is despite his trying to follow the many recommendations of his doctors. In addition, he was having trouble remembering, and that was part of the sleep apnea and part of the diabetes. Both of those things were causing him difficulties with his memory, and so it was part of his condition. Thank you. All right, counsel. Appreciate the argument, and the matter just argued will be submitted. The next matter on the argument calendar is Galvan.
judges: Rymer, Hawkins, Bybee